CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 10 2014

JULIA C. DUDLEY, CLERK
BY: BWEEKS
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STEPHANIE N. MCMILLIAN, | ) |
| | ) Civil Action No. 7:13-cv-19 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN,[1] | ) Hon. James C. Turk |
| Acting Commissioner of Social Security, | ) Senior United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff Stephanie N. McMillian ("Plaintiff" or "McMillian") brought this action for review of Defendant Carolyn W. Colvin's ("the Commissioner") final decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 401-434. This Court has jurisdiction over the action pursuant to 42 U.S.C. § 405(g). Both McMillian and the Commissioner filed motions for summary judgment. ECF Nos. 11, 13. The Court heard argument on the motions, see ECF No. 18, and they are now ripe for disposition.

This case stems from Plaintiff's second application for DIB, and, as happened with her first claim for benefits, the Administrative Law Judge ("ALJ") below concluded that Plaintiff was not disabled. The period of alleged disability that the ALJ in this case was evaluating began July 22, 2008 and ended December 31, 2010.[2] Although Plaintiff alleged several disabling conditions, the primary limiting conditions at issue in this appeal arise from shoulder, back, and

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

[2] Although McMillian's application alleges disability beginning on September 30, 2005, R. 174-80, the ALJ explained in his decision that the relevant period for this claim began on July 22, 2008, because Plaintiff's entitlement to benefits for the prior period had already been finally adjudicated in an earlier ALJ decision dated July 21, 2008. R. 17-18. Additionally, her date last insured was December 31, 2010. She does not contest the accuracy of these dates.

1

neck injuries she sustained in two separate car accidents, in September 2005 and July 2009, respectively.

In reaching his decision that McMillian was not disabled, the ALJ adopted in large part the functional limitations recommended by one of McMillian's treating physicians, Dr. Ritchie, in September 2011. The ALJ did not include the restriction set forth by Dr. Ritchie, however, that Plaintiff could not engage in any reaching, finding instead that she should be limited to no overhead reaching. Likewise, the ALJ discounted Dr. Ritchie's opinion that Plaintiff would miss work at least two days per month due to severe pain. The ALJ instead concluded that McMillian had the residual functional capacity ("RFC") to perform a limited range of sedentary work with additional restrictions including no "pushing and pulling of arm controls" and no "reaching overhead." R. 22.[3] Based on this RFC and other evidence of record, including testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff remained capable of performing work that exists in significant numbers in the regional and national economies and thus was not disabled. R. 28; see generally R. 17-30 (decision of ALJ).

In her motion for summary judgment, McMillian contends that the Commissioner erred in concluding she was not disabled. Her primary argument is that the ALJ erred by discarding portions of Dr. Ritchie's opinion and cherry-picking only parts of it to rely upon. She also posits that "the ALJ failed to analyze the cumulative effect of all of her medical problems." Id. at 8. McMillian also challenges the ALJ's decision by pointing to the written opinion provided by her independent VE, Mr. Hankins, who opined that Dr. Ritchie's recommended physical functional limitations would render her unable to perform the requirements of any positions that exist in significant numbers in the regional or national economy. ECF No. 12 at 7-8.

For the reasons stated below, the Court finds that substantial evidence supports the

---

[3] The Administrative Record, including a Supplemental Record, has been filed at ECF Nos. 8 and 15. Herein, the Court cites to specific pages of the Record as "R. __."

Commissioner's final decision. Accordingly, the Commissioner's Motion for Summary Judgment, ECF No. 13, is **GRANTED** and Plaintiff's Motion for Summary Judgment, ECF No. 11, is **DENIED**.

I.  **STANDARD OF REVIEW**

When reviewing the Commissioner's final decision, the Court is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner reached those findings through application of the correct legal standards. See 42 U.S.C. § 405(g); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted); Hancock, 667 F.3d at 472. If the Commissioner's determinations are supported by substantial evidence, a reviewing court may not substitute its judgment for the Commissioner's, but instead must defer to those determinations. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). Accordingly, "[i]n reviewing for substantial evidence, [this Court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ . . . . Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal alterations and citations omitted).

McMillian bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

3

months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[4] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A. Procedural Background

McMillian was born on August 31, 1970, R. 43, and was forty-one years old at the time

---

[4] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

4

of the ALJ's decision on October 14, 2011. At all relevant times, therefore, she was a "younger person" under the Act. 20 C.F.R. § 404.1563(c). She has a high school education and previously worked for seven years as a full-time payroll clerk. R. 43.

She filed a prior application for DIB in November 2006, alleging disability since September 30, 2005. R. 77. That claim was ultimately denied by the ALJ after a hearing, see R. 77-87, a decision upheld by the Appeals Council. R. 17. McMillian filed her second application for DIB—the one at issue here—in July 2009. R. 174-180.

Plaintiff's claim was denied at the initial and reconsideration levels of administrative review. R. 112, 119-21. At a September 14, 2011 video hearing before ALJ Joseph T. Scruton, both Plaintiff (who was represented by counsel) and a VE testified. See R. 36-62 (transcript from hearing). The ALJ issued his decision on October 14, 2011, finding that McMillian was not disabled due to her ability to perform sedentary work, with specific additional limitations discussed below. See R. 22; see also generally R. 17-30 (ALJ's decision).

In reaching this conclusion, the ALJ properly utilized the five-step process for determining whether a claimant is disabled. See Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520) (setting forth the five steps). The ALJ first determined that McMillian last met the insured status requirements of the Act on December 31, 2010, and that she had not engaged in substantial gainful activity since her alleged onset date through her date last insured. R. 20. At the second step, the ALJ concluded that McMillian had a number of severe impairments, specifically: "degenerative disc disease of the cervical spine; diabetes mellitus,[5] asthma; obesity; carpal and cubital tunnel syndrome,[6] status post surgeries;

---

[5] Diabetes mellitus is "a disease in which the metabolism of sugars is greatly impaired due to the faulty secretion of insulin by the pancreas." See J.E. Schmidt, Attorney's Dictionary of Medicine, at D-99 (1999) (hereinafter "Dict. of Med.").

arthrosis of the shoulders; [7] and depression." R. 20. He found her hypertension, acid reflux, and high cholesterol to be controlled and thus not severe, and her polycystic ovarian syndrome not severe because it did not result in any complications. Id. He concluded at the third step that none of her impairments or combination of impairments met or medically equaled the severity of any listed impairment. R. 20-21.

Based on the evidence before him, the ALJ determined that McMillian had the residual functional capacity, through the date last insured, to:

> perform sedentary work as defined in 20 CFR 404.1567(a). She would have been able to lift and carry up to 10 pounds occasionally and up to 5 pounds frequently; stand/walk for 3 hours in an 8-hour period for 1 hour at a time; and sit for 6 hours in an 8-hour period for 2 hours at a time. She would have been able to use the hands for simple grasping and fine manipulation. She would have needed to avoid pushing and pulling of arm controls. She would have been limited to occasional bending and squatting. She would have needed to avoid crawling, climbing, or reaching overhead. She would have needed to avoid all exposure to unprotected heights and mild exposure to moving machinery and driving automobile equipment. Lastly, she would have been able to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting.

R. 22. The ALJ relied on the VE's testimony that this RFC would allow McMillian to perform jobs that existed in significant numbers in the national economy, although it would not have allowed her to perform her past work. R. 27-28. Accordingly, the ALJ concluded McMillian was not disabled under the Act. R. 28-29.

Plaintiff requested Appeals Council review of the ALJ's decision, R. 13, and also submitted additional information in support of her request, including an additional vocational

---

[6] Carpal and cubital tunnel syndrome are conditions resulting from a compression or injury of the median nerve and the ulnar nerve at the elbow, respectively. They can result in pain and numbness in the forearm, hands, wrist and fingers. Dict. of Med., at C-96, C-517.

[7] Arthrosis means "disease of a joint." Med. Dict. at A-551.

evaluation from A. Bentley Hankins, offering a vocational opinion based on Dr. Ritchie's clarified recommended physical functional limitations, and some additional medical evidence. The Appeals Council stated that it considered the additional evidence, but found that it did not relate to the period adjudicated by the ALJ, which ended with the expiration of McMillian's last insured date of December 31, 2010. R. 2. The Appeals Council thus denied Plaintiff's request for review, R. 1, rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. McMillian timely filed this Complaint seeking review of the Commissioner's decision.

### B. Medical and Other Evidence[8]

The medical records indicate that McMillian sustained injuries as the result of an automobile accident on September 30, 2005. R. 43. She had an MRI performed in November 2005, which revealed minute posterocentral disc protrusion at C4-C5 and minute left posterolateral/foraminal disc protrusion at C5-C6 and C6-C7, as well as minimal foraminal narrowing at C6-7, secondary to the disc protrusion. R. 413-14. The report deemed these findings, however, to be "of questionable clinical significant." R. 413-14. McMillian received chiropractic care and participated in at least 38 physical therapy sessions, R. 420-439, but nonetheless reported little improvement in her ability to do daily activities and lingering discomfort in her neck. R. 420. In December 2005, McMillian was evaluated by Dr. John Carmody, who diagnosed cervicalgia and cervical disc protrusions at C4-5, C5-6, and C6-7. R. 477. In March 2006, Physician's Assistant Mark Davis, referred McMillian to a spine specialist due to McMillian's continued complaints of neck pain/stiffness with occasional radiculopathy of pain from neck to upper extremities. R. 469-470.

Dr. William Brown evaluated McMillian on October 31, 2006. R. 488-89. He diagnosed

---

[8] Medical evidence from prior to the period of disability at issue here (which began on July 22, 2008, see supra note 2) is presented for background information only.

7

left carpal tunnel syndrome and left tardy ulnar palsy. R. 489. Dr. Brown performed carpal decompression and ulnar nerve decompression surgeries, in November 2006 (left side) and December 2006 (right side). R. 481-87. McMillian had additional surgeries as well, including a lesser occipital nerve block from Dr. John Porter in December 2008. R. 265-67, and arthroscopic rotator cuff repair, subacromial decompression, and distal clavicle excision of the right shoulder by Dr. John Ritchie in June 2009. R. 283-84.

In July 2009, McMillian was involved in a second automobile accident. R. 50. An xray taken on July 4, 2009 revealed acromioclavicular separation of the right shoulder, R. 294. She continued to attend physical therapy sessions. R. 329-38. In November 2009, she underwent arthroscopy of the left shoulder with subacromial decompression and distal clavicle excision, as well as open biceps tenodesis. R. 347-48. On April 6, 2010, McMillian told Dr. Ritchie that her right shoulder was still uncomfortable but that she had made progress with the left. R. 571-72. In fact, several months earlier in February 2010, she had near full left shoulder range of motion with no instability, and she was "doing much better" although she noted that her pain was worse overhead. R. 573. On October 6, 2010, McMillian underwent a subacromial decompression, distal clavicle excision, and biceps tendonesis of the right shoulder with Dr. Ritchie. R. 614-15.

There are no more treatment records from Dr. Ritchie after October 2010. Nonetheless, in September 2011, Dr. Ritchie responded to a letter from Plaintiff's attorney stating that he believed that Plaintiff would miss work twice a month due to pain and may be unable to perform overhead lifting or vigorous use of the right shoulder. R. 656. Dr. Ritchie also completed a "physical capacities evaluation," in which he indicated that McMillian could sit for six hours in an eight-hour work day, and stand and walk for three each, and that she could lift and carry up to five pounds frequently and up to ten pounds occasionally. R. 657. He imposed no restrictions on simple grasping or fine manipulation, but opined that McMillian could only occasionally bend

8

and squat and could never crawl, climb, or reach. R. 657.[9]

On the same date, Dr. Ritchie answered a three-question "Clinical Assessment of Pain" form, indicating that McMillian's pain was "present to such an extent as to be distracting to adequate performance of daily activities or work" and in which he commented that McMillian "takes occasional narcotics which may from time to time be required for periods of increased pain requiring missing work." R. 658.[10]

In May 2011, a rheumatologist, Dr. William Gruhn, evaluated McMillian for complaints of neck, shoulder, leg, and foot pain, and diagnosed her with fibromyalgia with generalized muscle pain. R. 623-24. Dr. Gruhn completed a Clinical Assessment of Pain questionnaire in September 2011, in which he responded to only one of three questions posed to him and offered no comments. In his response to the one question he answered, he indicated that McMillian's pain was sufficient to be "distracting to adequate performance of daily activities or work." R. 653.

After the ALJ hearing, Mr. Hanks, a certified vocational evaluation specialist, evaluated McMillian's employment potential. He concluded that, if fully adopting Dr. Ritchie's opinions as to McMillian's functional limitations, and based on her acquired job skills from her previous employment as a payroll clerk, she cannot perform the requirements of positions that exist in significant numbers in the national economy. See generally R. 719-735.

---

[9] Plaintiff also points to a December 20, 2011 letter from Dr. Ritchie that she deems a "clarification," in which he purportedly explained that his prior opinion did not prevent Plaintiff from reaching on an occasional basis and that this restriction should date back to at least July 2009. The Commissioner complains that the letter is not a part of the administrative record and that Plaintiff has not shown it was submitted to the Commissioner. The Commissioner further contends that the letter is not a clarification, but a change of opinion and that it appears to have been authored "in an attempt to seemingly contradict an ALJ's decision that is supported by substantial evidence." ECF No. 14 at 12. In any event, the letter is not part of the record before the Court, and thus the Court does not consider it.

[10] As noted, the Appeals Council disregarded Dr. Ritchie's September 2011 evaluations on the grounds that they related to the period after the relevant time-period for evaluating disability (which ended on December 31, 2010, McMillian's date of last insured.)

9

At the hearing, McMillian testified on her own behalf. R. 43-58. She explained that she stopped working due to the injuries she sustained in the September 30, 2005 car accident. R. 43. Some of these injuries were later aggravated by her second car accident on July 4, 2009. R. 50, 54. She testified that she is bothered by any activities that involve the use of her arms, that her legs and feet ache so badly that she can hardly stand, R. 44, 47, and that on a "good day" she does "a little puttering around" and tries to do a load of laundry. R. 49. On a bad day, she sits in her recliner all day. Id. She testified that she generally has two good days in an average week. Id. She also does not sleep well at night. She testified that she lacked the strength in either hand to break the seal of a milk jug or soft drink bottle, R. 50, and also alleged difficulty with overhead reaching and repetitive motions with her upper extremities. R. 56.

## III. DISCUSSION

In her appeal to this Court, McMillian's primary argument is the ALJ erred in discounting portions of Dr. Ritchie's report, instead choosing to "cherry-pick" what to incorporate into his RFC. Relatedly, she claims that if he had given the entirety of Dr. Ritchie's report "great weight," then the result would be, as indicated in Mr. Hankins' report, that there is not available work McMillian can perform and thus she is disabled. She also makes the general argument that the ALJ failed to analyze the cumulative effect of all of her medical problems. See generally ECF No. 12.

The Commissioner responds to her arguments in its summary judgment motion. See generally ECF No. 14. First, it argues that the ALJ reasonably rejected the portion of Dr. Ritchie's proffered limitations that Plaintiff count not perform any reaching because a total preclusion against all reaching was contrary to the medical evidence of record, including his own treatment records and her own testimony. Relatedly, it argues that the ALJ properly rejected Dr. Ritchie's opinion that Plaintiff would miss work of at least two days per month due to pain,

because the medical evidence did not support the severe pain described by Dr. Ritchie. Finally, the Commissioner contends that the ALJ "properly determined that Plaintiff retained the ability to perform other work based on the Medical-Vocational Guidelines and applicable Social Security Rulings." ECF No. 14 at 2.

### A. The ALJ's Determination of the Weight to Be Given Dr. Ritchie's Testimony Is Supported By Substantial Evidence

McMillian takes issue with the ALJ's RFC and, in particular, his rejection of those portions of Dr Ritchie's opinion that: (1) she could not engage in any reaching; and (2) that she would miss more than two days of work per month due to pain. An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545, 419.945. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

The regulations provide that a treating physician's medical opinion is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence" of record. 20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1526(c)(2); Hunter v. Sullivan, 993 F.3d 31, 35 (4th Cir.

11

1992). Nothing in the governing statute or regulations, however, requires that more weight always be given to the opinions of treating sources. Rather, 20 CFR. § 416.927(d) directs the ALJ to also consider, when determining how much weight to assign a medical opinion, the supportability of the physician's opinion, the consistency of the opinion with the record, and whether the physician is a specialist. See 20 C.F.R. §§ 416.927(d)(3)-(5); see also Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Thus, the Fourth Circuit has explained that there is no "absolute" rule that greater weight should be afforded to a treating physician's opinion and indeed, it may be given less weight "if there is persuasive contrary evidence." Hines, 453 F.3d at 563 & n.2 (quoting Hunter v. Sullivan, 933 F.2d 31, 35 (4th Cir. 1992)). If, for example, the treating physician's opinion is not supported or is otherwise inconsistent with the record "it should be accorded significantly less weight." Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996). If an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must "give good reasons" for that decision. See 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).

Having reviewed the ALJ's reasoning on this issue and the entire record, the Court is convinced that substantial evidence supports the ALJ's RFC and, in particular, his decision not to adopt Dr. Ritchie's proposed limitations whole-cloth. Notably, this is not a case where the ALJ simply failed to consider the treating physician's opinion. To the contrary, the ALJ here reviewed carefully Dr. Ritchie's opinion and also spent some time explaining why it was giving great weight to much of Dr. Ritchie's opinion, and why certain aspects of that opinion were not entitled to great weight. In particular, the ALJ explained that Dr. Ritchie's assessment of the severity of pain and the complete prohibition on reaching conflicted with other evidence of record and his own treatment notes:

> The only limitation not entirely supported is the avoidance of all reaching. The undersigned notes that this is not entirely supported as [McMillian] has admitted to being able to wash her hair without difficulty after the first two shoulder surgeries. Moreover,

12

> treatment notes subsequent to the surgeries demonstrated increased range of motion with bilateral shoulders and showed muscle strength as intact.

R. 26-27. This conclusion is supported by substantial evidence in the record. In October 2009, she had a full range of motion of the left shoulder with no instability and the right shoulder "near full passive forward elevation," full internal rotation, and lacked only twenty degrees of external rotation. R. 580. Additionally, Plaintiff told her physical therapist in December 2009 that she could use both arms to wash her hair without problems. R. 360. In January 2010, she reported a sixty-five percent improvement overall, but had some stiffness and aching pain. R. 371. Additionally, in April 2010, Plaintiff had a full passive range of motion of the right shoulder, before the surgery on her right shoulder even occurred.

Additionally, Plaintiff's testimony at the hearing did not indicate that she had difficulty with all reaching, but focused primarily on overhead reaching, as did many of her medical records. R. 370, 656. Moreover, her physical therapy exercises in late December 2009 included seated pulleys, chest, presses, and seated high rows, R. 360, which all require reaching. In short, there is substantial evidence to support the ALJ's determination that McMillian's RFC did not preclude all reaching.

As to McMillian's related contention that the ALJ failed to consider the cumulative medical evidence, McMillian does not identify in her brief what specific additional evidence that the ALJ failed to consider her would render her disabled, and the Court's review of the record shows substantial evidence to support the ALJ's decision.

### B. The ALJ Reasonably Relied on the Impartial Vocational Expert Testimony From the Hearing

As noted, McMillian also argues that the ALJ erred in failing to credit the report of her VE, Mr. Hankins, and instead crediting the testimony of the VE from the administrative hearing. In his detailed report, Mr. Hankins describes a number of assessments and diagnostic tools he

13

used to evaluate McMillian's vocational abilities. He also credits Dr. Ritchie's assessment of McMillian's abilities, including Ritchie's clarified opinion, see supra note 9, that McMillian retained the ability to reach on an occasional basis and to handle on a frequent basis, although she could engage in no overhead lifting. Based on these functional limitations, Mr. Hankins opined that McMillian's "occupational base . . . would be extremely small because the large majority of unskilled, sedentary occupations require bimanual dexterity." R. 734. He nonetheless opined that she could perform the position of a surveillance-system monitor and a call-our operator, and that these two positions account for "about 20,000 to 22,000 employment positions in the United States and about 500 to 600 employment positions in Virginia." R. 734. He thus concluded that "if the trier of fact determines that Ms. McMillian is limited to the degree indicated by Dr. Ritchie, it is my vocational opinion that she does not retain access to occupations that exist in significant numbers in the regional or national economy." R. 734-35.

For the reasons the Court has already explained, the ALJ's decision not to credit certain aspects of Dr. Ritchie's report and the RFC found by the ALJ are supported by substantial evidence. Thus, Mr. Hankins' opinion, which utilizes a different RFC, need not be followed.

The Commissioner also correctly notes that, even if Mr. Hankins' opinion were credited, it shows that there are in fact jobs that exist in significant numbers that McMillian could perform. In particular, the Commissioner identifies two cases that stand for the proposition that 500 to 600 jobs are a significant number. See ECF No. 14 at 14 (citing Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) ("We do not think that the approximately 100 jobs testified to by the vocational expert constitute an insignificant number.") and Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (stating that 200 jobs in the region represent a significant number). The Court agrees that these cases suggest the number of jobs available, per Mr. Hankins, are sufficiently numerous that there is available work for Ms. McMillian.

As pointed out by the Commissioner, moreover, the ALJ here did not just rely on the VE's testimony, but also looked to the grids and explained the reasons why the additional limitations imposed by Dr. Ritchie did not erode the occupational base for sedentary work. R. 28-29 (quoted at ECF No. 14 at 14-15).

For all of these reasons, the Court concludes that substantial evidence supported the ALJ's conclusion that there are jobs in significant numbers in the regional and national economies that McMillian can perform and thus that the ALJ's finding of non-disability finds substantial support in the record.

## IV. CONCLUSION

The Court has determined that the ALJ's decision is supported by substantial evidence. Therefore, the Court **GRANTS** the Commissioner's Motion for Summary Judgment, ECF No. 13, and **DENIES** the Plaintiff's Motion for Summary Judgment, ECF No. 11.

An appropriate Order shall issue this day.

ENTER: This __ day of March, 2014.

_____
Hon. James C. Turk
Senior United States District Judge